**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SODEXOMAGIC, LLC<br><br>v.<br><br>DREXEL UNIVERSITY | CIVIL ACTION<br><br>NO. 16-5144 |

**MEMORANDUM**

**Baylson, J.**                                                                                 **November 28, 2017**

**I. Introduction**

In the initial Complaint, Plaintiff SodexoMAGIC, LLC ("Plaintiff") alleges that Drexel University ("Defendant") fraudulently induced Plaintiff, its long-time food service partner, into entering into a 10-year contract (the "Management Agreement"), executed on May 21, 2015, by falsely representing that its student enrollment would grow "at a robust rate," even though Defendant knew that student enrollment was going to decline. (ECF 1, "Compl." ¶ 2). Plaintiff further alleges that Defendant breached Sections 9.1[1] and 9.2[2] of the Management Agreement,

---

[1]      Section 9.1 provides, in pertinent part: Changes in Policies and Practices. The financial terms set forth in this Agreement and other obligations assumed by SodexoMAGIC hereunder are based on conditions in existence on the date SodexoMAGIC commences operations, including by way of example, Client's student population; labor, food, and supply costs; and federal, state and local sales, use and excise tax. In addition, each party has relied on representations regarding existing and future conditions and projections made by the other in connection with the negotiation and execution of this Agreement. In the event of a change in the conditions or the inaccuracy or breach of, or the failure to fulfill, any such representation by a party, the financial terms and other obligations assumed by the other party shall be renegotiated on a mutually agreeable basis to reflect such change, inaccuracy or breach. SodexoMAGIC shall submit any requested changes and the cause for such changes to Client, in writing, prior to any negotiations.

[2]      Section 9.2 provides, in pertinent part: Financial Assumptions. In the interest of a strong and lasting partnership, Client agrees to review the following items with SodexoMAGIC at the annual meeting in July of each year and discuss any applicable revisions to the Agreement that are mutually agreeable based on any deviations, provided that the relevant data and supporting documentation is submitted to Client thirty (30) days in advance of the meeting. Client recognizes that SodexoMAGIC made certain assumptions in preparing the financial package offered in this Agreement and understands that changes to the financial assumptions below may have an adverse economic impact on SodexoMAGIC; in such cases, Client shall work with SodexoMAGIC in good faith to mutually agree upon solutions in an effort to counter such impact. SodexoMAGIC acknowledges its responsibility to respond quickly and expertly to factors under their control that may affect these outcomes.

         Parties agree that the University's growth is a critical factor in calculating the Investments afforded under

which required the parties to engage in "good faith" negotiations to find a "mutually agreeable solution" to remedy an "enrollment inaccuracy," once discovered. (Id.). Plaintiff seeks compensatory and punitive damages.

Defendant moved to dismiss the Complaint (ECF 14), and this Court denied the motion on January 13, 2017, without prejudice to renew the motion at the conclusion of discovery. (ECF 26).

By agreement of the parties, and Order of the Court (ECF 121), Plaintiff was given leave to file a supplement to the initial Complaint to add a fifth cause of action. Plaintiff filed its Supplemental Filing on September 11, 2017, incorporating its prior allegations and adding a fifth cause of action for breach of contract (ECF 123). Defendant moved to dismiss the fifth cause of action on September 25, 2017 (ECF 126), to which Plaintiff filed a Response on October 10, 2017 (ECF 130). The Motion to Dismiss Plaintiff's fifth cause of action is now before the Court.

## II. Parties' Contentions

### (A) Plaintiff's Supplemental Filing

Plaintiff's Supplemental Filing alleges that Defendant owes, and refuses to pay to Plaintiff, an outstanding balance of $1.2mm. Plaintiff alleges that this constitutes a breach of a contract between the parties entitled the Management Agreement, which states in relevant part:

> For all invoices associated with Dining Program Services,
>
> > payments shall be due by electronic fund transfer within forty-five

---

this Agreement and it has been projected by SodexoMAGIC that this growth will realize an increase of 2% per year in the freshman class year over year. Additionally, Client expects that SodexoMAGIC will be similarly motivated in increasing voluntary meal plans among eligible students in accordance with Exhibit M.
    Minimum Catering Net Sales of Three Million Four Hundred Thousand Dollars ($3,400,000) in full Contract Year 1 (July 1, 2015 through June 30, 2016) with projected growth of three percent (3%) annually thereafter.

> (45) days after the invoice date. [Defendant] shall pay interest on
> any amount not paid when due at the lesser of one and one-half
> percent (1.5%) each month or the highest contractual interest rate
> allowed by applicable state law.

For all invoices associated with Queen Lane Campus services,

> [Defendant] shall pay the invoiced amount by electronic funds
> transfer within thirty (30) days after the invoice date and shall pay
> interest on any amount not paid when due at the lesser of the legal
> rate of interest under applicable state law and the rate of one and
> one-half percent (1.5%) each month from due date until paid.

Management Agreement, Section 8.1(A)(1).

Plaintiff alleges that "[w]ell after" it filed its original Complaint, counsel for Plaintiff contacted Defendant's counsel regarding overdue payments for fifty-eight services invoices and fourteen late payment invoices. Subsequently, according to Plaintiff's Supplemental Filing, Defendant paid some of the invoices. However, Plaintiff contends, there is an outstanding balance of approximately $1.2mm that Defendant refuses to pay.

Plaintiff attaches as exhibits two letters exchanged between Stephen Cozen (counsel for Defendant) and Timothy Fazio (counsel for Plaintiff), in which Plaintiff states its position that it is owed approximately $1.2mm.

The first letter, from Mr. Fazio to Mr. Cozen on March 21, 2017, states, among other things:

> (1) Defendant previously agreed to raise "the daily rate to $22.44 and lower commissions to 7.75% for the Fall 2016 semester," but then reversed position, which accounts for $680,087.47;
>
> (2) Defendant had a "specific agreement" with Plaintiff to provide a "subsidy for the University Club," which accounts for $43,572.45;
>
> (3) With the passage of time, but defrayed against Defendant's payment of some invoices and "the application of [Defendant's] commissions as a partial offset, the late fee calculation" accounts for $440,254.32; and

(4) Given Plaintiff's agreement that Plaintiff "is responsible for some of the [] labor wages, as well as [] payments to [Defendant's] departments," the "remaining total still owed by [Defendant] for the labor wages is $12,681.78" and the remaining total for inventory invoices is $76,945.81.

The second letter, from Mr. Cozen to Mr. Fazio on April 6, 2017, states, among other things:

(1) Defendant offered a reduced commission and increased daily rate, but Plaintiff "abandoned the negotiations and immediately sued" Defendant.

(2) Defendant offered a "subsidy of University Club operations . . . as part of a package of proposals" that Plaintiff rejected.

(3) Plaintiff "never provided that invoices for which it claims late fees are owed or otherwise provided any backup for this contention," and Defendant "will not pay unexplained and unsubstantiated late fees."

(4) Defendant "has never owed [Plaintiff] for labor wages" and "cannot understand [Plaintiff's] position if it will not produce the backup to substantiate offsets it is claiming."

(5) Defendant "does not dispute that some amount is owed" for inventory, "the amount claimed is quite high," and Plaintiff "must produce more detailed documentation for the claimed remaining inventory."

(6) Plaintiff owes Defendant $184,879.95 in dining dollars that students "rolled over" past the Fall 2016 semester.

**(B) Defendant's Motion to Dismiss**

Defendant moved to dismiss Plaintiff's Supplemental Filing for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motion to Dismiss asserts that Plaintiff:

(1) "does not identify the contractual basis for any of the amounts claimed, or identify or attach any invoices or statements of the accounts it purportedly seeks to collect,"

(2) bases its claims on "two lawyer settlement communications exchanged during the course of this litigation," which are inadmissible under Fed. R. Evid. 408, "and cannot be the basis for a cause of action," and

(3) "does not even attempt to explain the fundamental inconsistency in first claiming that Drexel failed to negotiate in good faith amendments to the Management

4

> Agreement to address the decline in freshman enrollment in the 2016 Fall Term [in its original Complaint] and then abruptly supplementing its Complaint to allege that Drexel breached the very amendment it supposedly refused to negotiate."

### (C) Plaintiff's Opposition to the Motion to Dismiss

Plaintiff's Opposition to Defendant's Motion to Dismiss has three sections, corresponding to Defendant's three contentions above.

<u>First</u>, Plaintiff contends that the Supplemental Filing pleads a legally sufficient breach of contract claim because it alleges: (1) the existence of a contract, including its essential terms, (2) breach of a duty imposed by the contract, and (3) resultant damages.

<u>Second</u>, Plaintiff contends that the letters it attached as exhibits to its Supplemental Filing were permissibly attached because: (1) they are not settlement communications, and (2) even if they were considered settlement communications, they are not barred by Fed. R. Evid. 408 because they are not offered to "prove or disprove the validity or amount of a disputed claim."

<u>Third</u>, Plaintiff asserts that the Supplemental Filing is not inconsistent with Plaintiff's claim for breach of contract for failure to negotiate in good faith because the bases for the "good faith" claim are several terms in the Management Agreement which are unrelated to the terms on which the Supplemental Filing's breach of contract claim is based. Plaintiff "remains of the position that Drexel failed to negotiate in good faith as to the first category," but acknowledges that "Drexel did negotiate as to the second category."

### (D) Defendant's Reply in Support of the Motion to Dismiss

Defendant's Reply brief asserts that Plaintiff "did not plead in its supplemental filing most of the facts it attempts to add through its Response and attached a whopping ten exhibits, eight of which were not filed previously, which is a clear admission that its supplemental

5

pleading does not on its own state a claim." Defendant particularly focuses on disputing three categories of supposed non-payments alleged by Plaintiff:

<u>First</u>, with respect to the alleged "past-due invoices," Defendant contends that Plaintiff "alleges no facts demonstrating unpaid obligations under [the Management] Agreement [and] does not attach these alleged past due invoices, state when they were submitted, what services they covered, or the amount supposedly due."

<u>Second</u>, with respect to the alleged agreement to increase board and commission rates beyond those specified in the Management Agreement, Defendant asserts that Plaintiff mischaracterizes Defendant's September 16, 2016 letter as a new agreement when it was actually a mere offer that Plaintiff never accepted. However, Defendant contends, Plaintiff did not allege facts "sufficient to state a plausible claim that this letter constituted a binding agreement."

<u>Third</u>, with respect to the "University Club subsidy claim," Defendant asserts that Plaintiff did not allege sufficient facts to state a claim about the issue in its Supplemental Filing. As such, Defendant states that it "remains in the dark as to what Sodexo is talking about, what the supposed University Club arrangement was, when and how it was supposedly made, and what the supposed terms are."

While Defendant also disputes the inclusion of Plaintiff's letters—maintaining that, as settlement negotiations, they are not permissible attachments—Defendant largely relies on its arguments made in the initial Motion to Dismiss.

### III. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." <u>Warren Gen.</u>

Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).

**IV. Discussion**

   **(A) Breach of Contract Claim**

To state a claim for breach of contract, a claimant must allege: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages from the breach. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) (internal punctuation omitted). An enforceable agreement exists only if there is an offer, acceptance, and exchange of consideration. Penn. Workers' Comp. Judges Professional Ass'n v. Bd. of Com., 39 A.3d 486 (Pa. Commw. Ct. 2012), aff'd, 66 A.3d 765 (2013).

Plaintiff's breach of contract claim is ostensibly straightforward. The alleged contract for the bulk of Plaintiff's claim is the Management Agreement, which has been repeatedly referenced in this litigation. The Management Agreement specifically imposes a duty upon Defendant to pay invoices as they come due. In the Supplemental Filing, Plaintiff alleges that Defendant breached its duty by refusing to pay invoices, with a resulting balance of approximately $1.2 million.

However, although Plaintiff's Supplemental Filing specifically limits the fifth cause of action to the Management Agreement, Plaintiff's Response asserts two further agreements (not alleged in the Supplemental Filing) that give rise to the alleged $1.2 million balance owed by

7

Defendant. According to Plaintiff,

> [t]his balance results from Drexel's breach of several distinct agreements between the Parties, and stems from Drexel's failures to:
> (1) honor its September 19, 2016 agreement to a board-rate increase and commission-rate decrease for the Fall 2016 semester, which it agreed to in consideration for SodexoMAGIC's continued provision of services to Drexel past the date of SodexoMAGIC's service obligations under the Management Agreement; [and]
>
> (2) honor its August 2016 agreement to subsidize the operation of the University Club, in consideration for SodexoMAGIC's continued provision of services to Drexel past the date of SodexoMAGIC's service obligations under the Management Agreement;
> . . .

Although Plaintiff's Supplemental Filing attached a letter quoting from the alleged September 19, 2016 agreement (i.e., number (1) above), it did not contain any references to or language from the alleged August 2016 agreement (i.e., number (2) above). At no point does Plaintiff explicitly say that these two agreements related to the services referenced in the Management Agreement and therefore that the failure of Defendant to pay the agreed-upon sums constituted a breach of the Management Agreement. To the extent Plaintiff relies on the breach of the two agreements referenced above for its fifth cause of action, Plaintiff has not adequately pled its claim.

Nonetheless, of the Supplemental Filing's six referenced "disputes," constituting a total of $1.2 million outstanding, only two of the disputes appear to pertain to the two agreements above, while four of the disputes appear to relate to breaches of the Management Agreement. The four disputes relating to breaches of the Management Agreement are:

(1) "outstanding late fees on SodexoMAGIC invoices as described above";

> (2) "the reconciliation of certain student labor wages";
>
> (3) "inventory invoices"; and
>
> (4) "the 'roll-over' of certain dining dollars."

The four above items are adequately pled as specific items related to the breach of the Management Agreement, and Plaintiff may continue pursuing its claim vis-à-vis these disputes. However, Plaintiff has inadequately pled its fifth cause of action with respect to:

> (1) "whether Drexel agreed to a board rate increase and commission rate decrease for the Fall 2016 semester SodexoMAGIC continued to provide services to Drexel despite Drexel's termination of the Management Agreement"; and
>
> (2) "whether Drexel agreed to [a] change in the subsidy of the University Club."

### (B) Exhibits to the Supplemental Filing

Plaintiff attaches to its Supplemental Filing two letters between its counsel and Defendant's counsel. This Court need not resolve the question of whether these letters are "settlement communications" under Fed. R. Evid. 408 because Rule 408 generally does not govern pleadings. See Steak Umm Co., LLC v. Steak 'Em Up, Inc., No. 09-2857, 2009 WL 3540786 (E.D. Pa. Oct. 29, 2009) (Stengel, J.). These letters are informative of the parties' contentions but the Court has not given them any weight in deciding the Motion to Dismiss.

## V. Conclusion

With respect to the disputes relating to the "University Club subsidy" and the "board and commission rate changes," Defendant's Motion to Dismiss is GRANTED, without prejudice. With respect to the other four disputes, pertaining to "outstanding late fees," "reconciliation of student labor wages," "inventory invoices," and "rollover dining dollars," Defendant's Motion to Dismiss is DENIED. Plaintiff will be granted leave to file an amended Supplemental Filing, limited to allegations regarding the "University Club subsidy" and "board and commission rate

changes."

        An appropriate Order follows.

O:\CIVIL 16\16-5144 Sodexomagic v Drexel\16cv5144 Memorandum re MTD.docx