**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SODEXOMAGIC, LLC, | |
| Plaintiff, | Case No. 2:16-cv-5144-MMB |
| v. | |
| DREXEL UNIVERSITY, | |
| Defendant. | |

**SODEXOMAGIC, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, SodexoMAGIC, LLC ("SodexoMAGIC") submits the instant Reply in support of its Motion for Summary Judgment (ECF 200) as to Counts I and II of Defendant Drexel University's ("Drexel") Amended Counterclaim (ECF 75) and as to Count V of SodexoMAGIC's Supplemental Filing to the Original Complaint (ECF 164).

## I.   <u>Introduction</u>

Based on Drexel's briefing, it appears Drexel is attempting to make a single, viable fraud counterclaim by cobbling together two separate, independently unviable fraud claims, namely (1) a claim that Drexel was induced to award SodexoMAGIC the Agreement based on SodexoMAGIC's alleged misrepresentations in its Initial Proposal and BAFO ("Award Claim") and (2) a claim that Drexel was induced to enter the Agreement because of SodexoMAGIC's alleged misrepresentations during contract negotiations ("Agreement Claim").[1] Throughout its briefing, Drexel dodges arguments by oscillating between characterizing its fraud claim as the Award Claim, the Agreement Claim, or a hybrid of the two. For example, in its "Preliminary Statement," Drexel argues that its fraud claim is based on inducement to "<u>award the dining services contract</u>," stating the claim "<u>is not premised on the Management Agreement</u>," but rather, on SodexoMAGIC's "false promises in the July 25, 2014 proposal . . . and the August 8, 2014 best-and-final-offer." (Def. Br. at 1 (emphasis added)). Then, to avoid dismissal based on the statute of limitations, Drexel argues it was induced to make "<u>undue concessions</u>" in the <u>Agreement</u> because of SodexoMAGIC's alleged misrepresentations during contract negotiations. (*Id.* at 5-6 (emphasis added)). There are numerous other examples throughout Drexel's opposition. (*E.g., compare id.* at 8-9, 10-11 (Award Claim), *with* 10 (Agreement Claim)).

Drexel's obfuscation fails to save either version of its fraud claim. The Award Claim fails because it is barred by the statute of limitations, lack of a contract, and failure to establish

---

[1] Drexel's Amended Counterclaim is similarly ambiguous.

justifiable reliance. The Agreement Claim fails because it is barred by statute of limitations and gist of the action.[2] Drexel's opposition also fails to establish any disputes of material fact regarding Drexel's breach of contract claims or SodexoMAGIC's breach of contract claim for accounts receivable.

## II.   Argument

### A.   Drexel's Amended Counterclaim Count I: Fraud

For clarity, SodexoMAGIC untangles Drexel's combined fraud counterclaim, addressing the single counterclaim in terms of the Award and Agreement Claims as though they were properly brought as independent counts. By doing so, SodexoMAGIC prevents Drexel from bootstrapping the claims together to save each from its own weaknesses.

#### 1.   Drexel's Fraud Counterclaim Is Barred by the Statute of Limitations.[3]

Drexel's Award Claim is barred by Pennsylvania's two-year statute of limitations. 42 Pa. C.S. § 5524(7); *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, (Pa. Super. Ct. 2016). Contrary to Drexel's argument, the discovery rule is unavailing. Drexel's own cited cases stand for the rule that a cause of action accrues when the plaintiff discovers the injury. *See Dubose v. Quinlan*, 173 A.3d 634, 638 n.4 (Pa. Super. Ct. 2017); *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).[4] Drexel contends that the discovery rule tolls the cause of action until the plaintiff

---

[2] Drexel's fraud claim is also barred by its disregard of this Court's October 12, 2017 instructions and Order.

[3] Drexel repeatedly alleges that SodexoMAGIC stated it "misunderstood" Drexel's representations in the RFP regarding enrollment growth. (Def. Br. at 1, 3, 5-7, 9, 10). This is factually inaccurate, as SodexoMAGIC has never contended that it "misunderstood" any of Drexel's misrepresentations. Drexel attempts to characterize its own fraudulent misrepresentations and omissions as a "misunderstanding." Drexel cites to no evidence supporting this contention. Moreover, even if true, Drexel still had a duty to correct and had plenty of notice that SodexoMAGIC was "confused." Restatement (Second) of Torts, ¶ 551; *see Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 586 (W.D. Pa. 2004) (observing Pennsylvania applies Section 551 of the Restatement (Second) of Torts). Drexel has admitted that it did not share any enrollment or budgeting information with SodexoMAGIC, and allowed SodexoMAGIC to believe that its assumption of 2% growth year over year was realistic. (SOF ¶ 37).

[4] Strangely, Drexel elected to rely upon two decisions that apply the discovery rule in the specific context of the discovery of physical injury in negligence actions. *See Dubose*, 173 A.3d at 638 n.4 (plaintiff argued that discovery

discovers a <u>motive</u> for the alleged injury—it does not. *See Edwards v. Duane, Morris &*
*Heckscher, LLP*, No. CIV.A. 01-4798, 2002 WL 32348269, at *7 (E.D. Pa. Aug. 15, 2002)
(applying Pennsylvania law) (declining to apply discovery rule where plaintiff knew he had been
injured by defendant's conduct, but later found out defendant may have acted fraudulently in
causing the injury).[5] Pennsylvania law is clear that a cause of action accrues when the plaintiff
knew or should have known <u>that he was injured</u>. *Gleason v. Borough of Moosic*, 15 A.3d 479,
484 (Pa. 2011) (emphasis added).

In the Award Claim, the "injury" was awarding SodexoMAGIC the dining services
contract on August 15, 2014 based on economic terms in SodexoMAGIC's submissions which
ultimately did not become part of the Agreement. (Def. Br. at 1). Drexel admits that it knew
about that discrepancy on September 19, 2014, when SodexoMAGIC circulated the first contract
draft. (SodexoMAGIC's Statement of Undisputed Facts ("SOF")[6] ¶¶ 33-34). At that point,
Drexel knew the Agreement would not contain identical economic terms as SodexoMAGIC's bid
submissions, and thus, knew of its alleged injury. (*Id.*). That Drexel later "discovered" an alleged
motive is irrelevant.[7]

Drexel also invokes the doctrine of fraudulent concealment as to the Agreement claim,

---

rule applied because he had not yet discovered wife's physical injuries); *Fine*, 870 A.2d at 858 (holding that
discovery rule applied where plaintiff did not yet know that his injury arose from dental surgery).

[5] *See also Malewicz v. Michael Baker Corp.*, No. 01741 DEC.TERM 2002, 2005 WL 503091, at *7 (Pa. Com. Pl.
Feb. 15, 2005), aff'd, 894 A.2d 829 (Pa. Super. Ct. 2005) (declining to apply discovery rule where plaintiffs knew
that an injurious lawsuit had been filed against them, but later found out the motive for the suit); *Pocono Int'l
Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (1983) ("The statute of limitations begins to run as soon
as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the
running of the statute of limitations.").

[6] For purposes of this Motion, all references to SodexoMAGIC's Statement of Undisputed Facts ("SOF") refer both
to the fact stated by SodexoMAGIC and Drexel's response thereto.

[7] Moreover, Drexel knew exactly why SodexoMAGIC changed those terms—because Drexel, which had
represented throughout the RFP process that enrollment would grow in accordance with specific metrics from its
Strategic Plan, refused to include those metrics in the Agreement.

but to no avail. The doctrine of fraudulent concealment applies where there is "an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury." *Calle v. York Hosp.*, 232 F. Supp. 2d 353, 360 (M.D. Pa. 2002) (applying Pennsylvania law) (emphasis added). The relevant injury as related to the Agreement Claim was entering into the Agreement as written, which included the "concessions." (SOF ¶ 40). There can be no dispute that Drexel was <u>aware</u> that it entered the Agreement in May 2015, and therefore, the fraudulent concealment defense is inapplicable. As with the Award Claim, Drexel again tries to focus on SodexoMAGIC "hiding" its alleged motives. But discovery of motives is irrelevant. *See Edwards*, 2002 WL 32348269, at \*7. What matters is that Drexel knew it entered the Agreement with concessions and knew it made those concessions because of SodexoMAGIC's representations. (SOF ¶ 41).[8]

>    2.    <u>Drexel's Fraud Counterclaim Fails Because the Award Is Not a Contract.[9]</u>

SodexoMAGIC's position that Drexel's fraud counterclaim cannot proceed without an underlying contract relates to the Award Claim.[10] In responding to SodexoMAGIC's argument on this point, Drexel misstates Pennsylvania law, citing a single case noting only that "contractual privity" is not required for a fraud claim. *Woodward v. Deitrich*, 548 A.2d 301 (Pa. Super. Ct. 1988). The *Woodward* case is inapplicable because the plaintiffs there had entered a

---

[8] Drexel's contention that "[p]arties are not required to investigate every representation made to them in the ordinary course of business" (Def. Br. at 7) is remarkable given Drexel's insistence that it was SodexoMAGIC's responsibility to confirm the truth of Drexel's representations about enrollment growth. Nonetheless, Drexel needed no investigation to discover SodexoMAGIC was not including exact terms of its Initial Proposal and BAFO in the Agreement. Rita LaRue immediately noted the fact after receiving the first draft. (SOF ¶ 34).

[9] Drexel posits that SodexoMAGIC is somehow precluded from this argument because it was not expressly listed in its Statement of Issues for Summary Judgment submitted to this Court on March 26, 2018. (ECF 194). This Court never instructed that an argument would be precluded if it was not stated in this preliminary briefing.

[10] Drexel claims SodexoMAGIC's position that the Award did not create a contract conflicts with SodexoMAGIC's position that Drexel's fraud claim is barred by gist of the action. (Def. Br. at 9). Any contradiction is solely because SodexoMAGIC has been forced to attempt to pin down the moving target of the basis of Drexel's fraud claim.

contract to their detriment. In *Woodward*, the plaintiff home purchasers brought an action against the sellers and a sewer constructor, claiming they were induced to enter a purchase agreement when the sewer constructor concealed his failure to install proper connections, and that the sellers negligently misrepresented the same to the plaintiffs. *Id.* at 307. The plaintiffs alleged that the sewer constructor was partially responsible for the sellers' misrepresentations that had induced them to enter the purchase agreement. *Id.* The court opined that contractual <u>privity</u> between a contractor and purchaser was not required. *Id.* at 312-15. Unlike the plaintiffs in *Woodward*, under its Award Claim, Drexel assumed no contractual obligations after it merely awarded SodexoMAGIC the contract and incurred no loss.[11] (Def. Br. at 9 ("[T]he parties were not contractually bound until the Management Agreement was executed.")). Drexel was free to walk away, and it was not obligated to remain at the negotiating table.

Drexel next argues that it was fraudulently induced because the economic terms of the RFP proposals were the basis of Drexel's decision to award the contract. (Def. Br. at 9). Drexel's emphasis upon its need to "rely upon bidders honoring the economic proposals made" is shocking given Drexel's repeated assertion that the enrollment information Drexel <u>gave to the bidders and required them to use</u> was not something it intended them to rely on. (SOF ¶ 43). By Drexel's logic, Drexel could provide any information to bidders, require them to base financial proposals on it, and then hold them to those financial proposals regardless of whether the information provided was actual or hypothetical. Moreover, while Drexel may have "anticipated

---

[11] Drexel repeatedly states that its measure of damages is "the difference between the economic terms Aramark offered in response to the RFP and of the contract it ultimately executed with Aramark" in 2016. (Def. Br. at 9). It is nonsensical for Drexel to assume that the reason it was unable to negotiate the same terms from Aramark in 2016 as Aramark offered in response to the 2014 RFP had anything to do with SodexoMAGIC. In reality, by 2016, Drexel revealed its enrollment decline, even going so far as to misrepresent to Aramark that SLM was implemented *after* the RFP after internally discussing whether Drexel could go back to the RFP responses given that the circumstances had changed. (SOF ¶¶ 47, 63-64). In essence, Drexel seeks the benefit of the deal it would have gotten if it had defrauded Aramark rather than SodexoMAGIC. This flawed theory also assumes that there would have been no period of negotiation between Aramark and Drexel after the award, which is not true. (SOF ¶¶ 28-29).

that the only negotiation that would occur after the contract award would be over any legal terms or conditions," the terms of SodexoMAGIC's offer necessitated changes after Drexel backtracked from the very metrics upon which the offer was based. (SOF ¶¶ 7, 38).

> 3.     Drexel Fails to Establish Justifiable Reliance on the Award Claim.

The Award Claim is barred by justifiable reliance.[12] Drexel maintains that, while it knew SodexoMAGIC did not include all financial terms of its Initial Proposal and BAFO in the Agreement, it did not know <u>why</u>. But evidence from Drexel shows that the purpose of the RFP was to make an "apples to apples" comparison of the bidders, not to box them into economic terms. (SodexoMAGIC's Resp. to Drexel's Supp. SOF ("Add'l SOF")[13] ¶ 9). Furthermore, SodexoMAGIC explicitly stated in its BAFO that its proposal was tied to Drexel's representations in the RFP. (SOF ¶ 23). As a result of this "apples to apples" strategy and SodexoMAGIC's disclaimer, Drexel cannot claim that it was justified in relying on SodexoMAGIC's submissions as providing definitive economic contract terms, especially given that Drexel knew that the information it provided in the RFP was false. (Add'l SOF ¶ 18).

> 4.     Drexel's Agreement Claim Is Barred by Gist of the Action.

Drexel's Agreement Claim is premised on the allegation that Drexel made concessions from the terms of the Initial Proposal and BAFO because of alleged misrepresentations by SodexoMAGIC. In other words, Drexel is claiming that SodexoMAGIC failed to honor the terms of its Initial Proposal and BAFO in the ultimate Agreement. As discussed within SodexoMAGIC's opening brief, there is no tort duty that required SodexoMAGIC to honor its

---

[12] Prior to Drexel's opposition, it was not clear that Drexel was linking the allegedly fraudulent Initial Proposal and BAFO only with the Award Claim. As a result of Drexel's vague counterclaim statement, in its opening brief SodexoMAGIC argued that Drexel could not claim that it justifiably relied on the Initial Proposal and BAFO in entering the Agreement.

[13] As with the references to SodexoMAGIC's SOF, references to Drexel's Supplemental SOF include references to both Drexel's statement and SodexoMAGIC's response thereto.

Initial Proposal or BAFO. (Pl. Br. at 14). Under the binding standard from *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68-69 (Pa. 2014), that means the Agreement Claim fails.[14]

Instead of confronting the binding legal standard in Pennsylvania, Drexel claims for the first time that the relevant injury was "stay[ing] at the negotiation table" with SodexoMAGIC, an apparent hybrid of its Award and Agreement Claims.[15] (Def. Br. at 12). But even this trick fails. Drexel attempts to analogize the instant case to those where courts have permitted a plaintiff to maintain a fraud claim based on false promises "to continue a relationship." (Def. Br. at 11). None of the cases cited by Drexel are analogous, as they all concern parties that had <u>already entered into a contract</u>, and the fraud allegedly caused continued performance of that contract.[16] Drexel's attempt to analogize these cases to the case at bar is absurd. Drexel attempts to proceed under this theory because its previous dining services agreement was with a Sodexo entity. But Drexel had already terminated the previous Sodexo entity agreement and had not yet entered into a new agreement with SodexoMAGIC. (SOF ¶ 40). Thus, Drexel cannot claim that it was induced into continuing an agreement, especially given that Drexel <u>specifically</u> declined to structure the new Agreement as an amendment to the previous one, insisting that it be drafted as a completely new contract. (SOF ¶ 33 ("Drexel indicated that it wanted the parties' agreement to be memorialized in a new, comprehensive contract and not an amendment.")).

---

[14] Yet again, Drexel, as in its own motion for summary judgment, fails to cite a single case following *Bruno*, which altered the test for applicability of the gist of the action doctrine. 106 A.3d at 68-69.

[15] As detailed in SodexoMAGIC's Motion (Pl. Br. at 14), Drexel's allegation that SodexoMAGIC breached certain financial duties that it undertook in its BAFO is exactly the claim contemplated and precluded by gist of the action, as even Drexel admits that those "commitments" were modified and then subsumed into the Agreement. (ECF 75, ¶¶ 17, 23, 36-38, 81-85; SOF ¶¶ 37-38). Notably, Drexel goes to impressive lengths throughout its brief to avoid saying outright that it was induced into entering the Agreement, instead stating that it was: "induce[d] [ ] to make additional concessions" (in the Agreement) (Def. Br. at 2); induced into "offer[ing] substantial concessions" (in the Agreement) (Def. Br. at 3); induced into making "undue concessions" (in the Agreement) (Def. Br. at 6); induced into making "unwarranted concessions" (in the Agreement) (Def. Br. at 10); "induced [ ] to stay at the negotiating table" (until executing the Agreement) (Def. Br. at 12); and "induce[d] . . . to continue the relationship with a Sodexo entity" (via the Agreement) (*Id.*).

[16] In fact, Drexel's cited cases were all previously distinguished by SodexoMAGIC in its Motion. (Pl. Br. at 14).

5.      Drexel's Fraud Counterclaim Is Precluded for Failure to Comply with This Court's Orders.

SodexoMAGIC stands by its position as stated in its opening brief, as well as in its currently pending Motion for Sanctions. (ECF 162). Drexel's complete disregard for this Court's Order and instructions at the October 12, 2017 hearing precludes the admission of all evidence of Drexel's so-called damages, and thus, Drexel's fraud counterclaim must fail.

**B.      Drexel's Amended Counterclaim Count II: Breach of Contract**

1.      No Breach as to Mr. Johnson's Appearances

The plain language of the Agreement does not obligate SodexoMAGIC to produce Mr. Johnson for two visits on campus per year. (SOF ¶ 71). The lengthy negotiations that Drexel has emphasized resulted in *both Parties* agreeing to include "up to two visits annually." (*Id.*) (emphasis added). Drexel's contention that this requires SodexoMAGIC to produce Mr. Johnson for a minimum of two visits per year is wrong *ab initio*.

Drexel also mischaracterizes the condition in the Agreement that Mr. Johnson's visits were subject to finding mutually agreeable dates (SOF ¶ 71) as applying only to SodexoMAGIC, stating that "[SodexoMAGIC] was obligated to work to bring Mr. Johnson out to campus for two visits." (Def. Br. at 14). This has no basis in Section 8.15. Drexel also asserts that it made efforts to find dates, but fails to support this with evidence that it complied with the Agreement's requirements that Drexel "propose a minimum of three (3) dates for consideration," "provide a proposed agenda for Mr. Johnson's review and consideration," and make any such request "a minimum of twelve (12) weeks in advance." (SOF ¶ 71).[17] In any event, while SodexoMAGIC's

---

[17] Drexel cites to an email dated January 16, 2015, in which Mr. Johnson was forced to cancel an appearance due to a personal emergency (Drexel Ex. 74-A). Drexel provides no information regarding its request for this visit, and no evidence that it complied with the requirements of the Agreement. Drexel also cites to an email thread in which SodexoMAGIC informed Drexel that Mr. Johnson would not be able to appear as commencement speaker. (Drexel Ex. 74-B). In this email chain, LaRue thanks Mr. Johnson for his attendance at a recent Board of Trustees dinner, and requests that Mr. Johnson appear as Drexel's commencement speaker as well as for a planning session between

BAFO estimated the value of a visit, the Agreement contains no such valuation, nor does it provide that Drexel is entitled to compensation in that amount if mutually agreeable dates were not identified.

2.      No Breach as to Staffing Key Management Positions

Regarding its claim for breach of contract as related to key management positions, Drexel turns a blind eye to the actual facts and hopes that it can capitalize on a hyper-technicality to recover money despite incurring no damages. Drexel's claim is predicated on vacancies in the General Manager of Retail Operations and Campus Executive Chef positions during SodexoMAGIC's time at Drexel. Though the Agreement provides that there may be liquidated damages for such vacancies, a strict reading of this provision would unjustly ignore the facts: that SodexoMAGIC repeatedly proffered candidates for both positions (SOF ¶ 74), that Drexel demanded to be involved in the hiring process (SOF ¶ 75), that Drexel rejected candidates for both positions (SOF ¶ 76), preventing SodexoMAGIC from hiring (thereby breaching the Agreement and relieving SodexoMAGIC of its duty to perform),[18] and that SodexoMAGIC mitigated the effects of those vacancies and expended money and resources by hiring additional managers to handle the duties of those positions (SOF ¶¶ 77-78). The temporary vacancy in the

---

Mr. Johnson and President Fry. (*Id.*). LaRue does not include a proposed agenda or three dates as required by the Agreement. (*Id.*) Nonetheless, the email chain clearly demonstrates SodexoMAGIC's persistence in its efforts to respond to Drexel's request and work towards having Mr. Johnson appear. Indeed, when Drexel ultimately decided to book someone else to speak, SodexoMAGIC conveyed a request from Mr. Johnson to "start planning now for his visit back on campus." (*Id.* at 1319a).

[18] Drexel argues that, because the Agreement only specified that Drexel must approve of the District Manager in Residence, it should be assumed that Drexel did not "have veto power over the hiring process for these other positions." The Agreement does not specify whether hiring for the General Manager of Retail Operations or Campus Executive Chef was subject to Drexel approval. Given that the Agreement is silent, coupled with Drexel's required approval over *some* hiring and Drexel's insistence on involvement in the hiring process (SOF ¶ 75), a reading that hiring for these key positions was subject to Drexel's approval is reasonable and consistent with the Agreement. *See Barmasters Bartending Sch., Inc. v. Authentic Bartending Sch., Inc*., 931 F. Supp. 377, 385 (E.D. Pa. 1996) ("[W]hen a contract is not ambiguous, a court may utilize the doctrine of necessary implication to enforce the clear intentions of the parties and avoid injustice when an obligation is within the contemplation of the parties."); *Jenkins v. Jenkins*, No. 1025 WDA 2012, 2013 WL 11261852, at *3 (Pa. Super. Ct. Sept. 26, 2013).

relevant positions does not constitute a material breach of the Agreement in light of SodexoMAGIC's actions to mitigate and Drexel's own failure to assist. *See Giacone v. Virtual Officeware, LLC*, No. 13CV1558, 2014 WL 7070205, at *12 (W.D. Pa. Dec. 12, 2014), *aff'd*, 642 F. App'x 137 (3d Cir. 2016) (finding no material breach where "a party has honestly and faithfully performed all material elements of its obligation under a contract, but has failed to fulfill certain technical obligations, causing no serious detriment to the injured party").[19]

### 3.   No Breach as to Monetary Contributions

Drexel contends that because SodexoMAGIC accepted some terms and rejected others, no agreement was reached regarding certain monetary contributions. With regard to the monetary contributions, SodoxoMAGIC unequivocally provided "unconditional and absolute" acceptance. Drexel mischaracterizes SodexoMAGIC's response as a "counter-offer," when in reality, it unconditionally and absolutely accepted many of the offers in Drexel's letter. (SOF ¶ 81). Unlike the "counter-offers" in Drexel's cited cases, SodexoMAGIC made no changes, conditions, or qualifications to the offers it accepted, including Drexel's offer regarding monetary contributions. (SOF ¶ 81). LaRue's August 24, 2016 letter demonstrates Drexel's understanding that SodexoMAGIC had unconditionally accepted its offer regarding monetary contributions, characterizing the items listed in its letter as those "that we have not yet mutually agreed upon"—and no longer listing the monetary contributions piece. (*Id.*). A common sense reading of LaRue's letter is that Drexel understood that offer has already been accepted.

Moreover, the Agreement provisions cited by Drexel requiring the contributions are subject to Section 8.3, which gives SodexoMAGIC the right to offset, "*from any [ ] sums owed*

---

[19] Drexel relies upon the general principle that liquidated damages provisions will be enforced when designed to compensate for delays in a party's performance where damages are not readily calculable. SodexoMAGIC does not dispute the existence of said provision. However, its enforceability is irrelevant—the provision was never triggered, as SodexoMAGIC effectively remedied any consequence of those vacancies, and Drexel contributed to those vacancies, resulting in no material breach of the Agreement.

*by SodexoMAGIC to [Drexel],*" any portion of outstanding receivables owed by Drexel that were more than thirty days overdue. (SodexoMAGIC Ex. 4 at 21). In August of 2016, the overdue receivables far exceeded the claimed monetary contributions. (ECF 123, ¶ 116).

### 4.   No Breach as to Key Performance Indicators

Drexel contends that the information required to evaluate whether SodexoMAGIC hit the KPIs was "exclusively within SodexoMAGIC's possession." (Def. Br. at 18). The falsity of this statement is clear from the fact that Drexel points to no evidence to support it—instead, Drexel cites only to a self-serving declaration by LaRue saying as much, with no citation to the record. Drexel also boldly claims that it "has *adduced evidence* that [SodexoMAGIC] never provided this information to Drexel for use at an annual business review and never scheduled such a review so the parties could evaluate [SodexoMAGIC's] performance" (Def. Br. at 18) (emphasis added). Yet again, Drexel does not cite to any of this supposed evidence (because it does not exist), instead again relying conveniently upon LaRue's sham declaration.

Even assuming, *arguendo*, that SodexoMAGIC did not provide Drexel the information or request to schedule a review, Drexel's argument fails, as the Agreement does not require SodexoMAGIC to do so. Drexel attempts to rewrite the Agreement to place the onus entirely on SodexoMAGIC. The Agreement contains no obligation or condition precedent, as Drexel contends, requiring SodexoMAGIC to provide information to Drexel or to initiate scheduling of a review. Rather, it only states that the Parties will review the KPIs annually. (SOF ¶ 83). *See Amerikohl Mining, Inc. v. Mount Pleasant Twp.*, 727 A.2d 1179, 1184 (Pa. Commw. Ct. 1999) (holding that a court will not read a new term into a contract unless it is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term). There is no dispute that the Parties did not meet and mutually determine that the KPIs were not met (SOF ¶¶ 85-86), and as such, Drexel is not entitled to any compensation related to KPIs.

11

C.    **SodexoMAGIC Is Entitled to Summary Judgment on Its Supplemental Filing Count V: Breach of Contract**

SodexoMAGIC is entitled to summary judgment on its claim for outstanding accounts receivable. First, Drexel's argument that SodexoMAGIC "never made a demand for relief, in violation of Rule 8" is disingenuous. The Parties agreed and this Court allowed (ECF 121) that SodexoMAGIC could supplement its Complaint, to eliminate the need to amend the pleadings, and SodexoMAGIC did exactly that (ECF 123). The original Complaint, of course, contains SodexoMAGIC's prayer for relief. The filing was never intended to be a standalone pleading.[20]

1.    Drexel Failed to Pay SodexoMAGIC the Agreed-Upon Increased Board Rate and Decreased Commission

Drexel does not address SodexoMAGIC's motion as related to Drexel's failure to pay SodexoMAGIC the agreed-upon increased daily rate and accept a reduced commission for the period between September 19 and December 10, 2016. Drexel does not refute SodexoMAGIC's position and instead improperly "incorporates" its own summary judgment briefing (presumably to stay within the page limits it seeks to circumvent at every opportunity). To the extent that this Court accepts Drexel's incorporation of its own Motion for Summary Judgment (ECF 220), SodexoMAGIC incorporates its opposition to Drexel's motion. (ECF 227).

2.    SodexoMAGIC Is Entitled to Outstanding Contractual Interest

Drexel contends that SodexoMAGIC is not entitled to summary judgment as relates to contractual interest because it "has never adduced evidence to show the basis on which it claims late fees are owed." This is patently untrue. The record is replete with evidence that the late fees are owed, including the Agreement, which states the circumstances under which contractual interest accrues (SOF ¶ 91); SodexoMAGIC's repeated production of invoices as well as

---

[20] After stipulating to filing the Supplemental Filing to Original Complaint, Drexel then moved to dismiss the claim. (ECF 126). Drexel's motion to dismiss, which this court rejected (ECF 26), makes absolutely no mention of Rule 8, nor does it allege that the SodexoMAGIC failed to state a claim by not including a demand for relief. (ECF 126).

accounting statements detailing the contractual interest and associated invoices (SOF ¶ 92); and Drexel's own admission that it has refused to pay past due invoices. (SOF ¶¶ 93, 99).

Drexel also suggests that summary judgment is improper because SodexoMAGIC did not "duly invoice" Drexel for contractual interest.[21] But SodexoMAGIC did invoice Drexel for contractual interest, repeatedly providing Drexel with supporting documentation and even separating the contractual interest invoices related to outstanding accounts receivable from those related to the disputed shortfall invoices, for Drexel's convenience. (SOF ¶ 92). Drexel also again attempts to write new terms into the Agreement. Section 8.1 of the Agreement addresses billing, and lays out when SodexoMAGIC is entitled to contractual interest. (SOF ¶ 91). There is absolutely no provision, in Section 8.1 or elsewhere, "requiring" SodexoMAGIC to "duly invoice" Drexel or provide itemization and backup, as Drexel contends—which explains Drexel's failure to provide any citation for this alleged obligation.

3.    Drexel Owes SodexoMAGIC Amounts Related to Student Labor Wages, Inventory Invoices, and Dining Dollars

Drexel tries to avoid paying SodexoMAGIC amounts it admits are owed by claiming a right to "offset" those outstanding invoices by amounts it contends SodexoMAGIC owes. The Agreement does not contain (and indeed, Drexel does not cite) any provision permitting Drexel to "offset" amounts that it owes SodexoMAGIC. Section 8.3 of the Agreement gives *SodexoMAGIC*—and only SodexoMAGIC—the right to offset. (SodexoMAGIC Ex. 4 at 21). Beyond its attempt to invoke a nonexistent right to offset, Drexel does not address the fact that Drexel admits it owes SodexoMAGIC amounts related to student labor wages and inventory invoices (SOF ¶¶ 95-96), and has flatly refused to pay those amounts (SOF ¶¶ 99).

Drexel also attempts to escape its admission that it owes SodexoMAGIC for rollover

---

[21] Again, Drexel's only citation in support of its contention is a single reference to LaRue's self-serving affidavit.

dining dollars by inventing a false context for LaRue's admission. Drexel claims that LaRue testified that "in her view, after netting [SodexoMAGIC's] outstanding invoices against the amounts it owes to Drexel for Dining Dollar rollover, 'Drexel owes Sodexo approximately $75,000.00,' but that does not factor in the money that [SodexoMAGIC] owes to Drexel on Drexel's counterclaims." (Def. Br. at 19). In reality, LaRue testified as follows:

> A:   Sodexo owes Drexel for dining dollar rollover and Drexel owes Sodexo for Dragon Dollars.
>
> Q:   Okay. And what's the net of that – *of those particular amounts*?
>
> A:   I don't know the net of those particular amounts.
>
> Q:   Is it—do you know whether it is that if you net those out Drexel owes Sodexo money or Sodexo owes Drexel money in your view?
>
> A:   In my view, looking at the invoices, not the late fees, Drexel owes Sodexo approximately $75,000.

(SOF ¶ 97) (emphasis added). Notwithstanding the fact that Drexel has no right to offset amounts owed, LaRue's testimony was indisputably not in reference to a net amount owed after offset. Moreover, the Agreement expressly requires that, upon termination, "all outstanding amounts owed SodexoMAGIC shall become due and payable immediately upon notification of termination by [Drexel]." (SodexoMAGIC Ex. 4 at 5). The dining dollars owed to SodexoMAGIC became due and payable when Drexel terminated the Agreement on September 19, 2016. (SOF ¶ 87).

4.   SodexoMAGIC Is Entitled to Attorneys' Fees

Section 10.12 of the Agreement states that "[t]he Parties shall pay each other reasonable collection expenses, attorneys' fees and court costs incurred in collecting from each other any amount not paid when due, and/or in connection with the enforcement of an indemnity obligation of a party under this Agreement." (SOF ¶ 98). Drexel's contention that SodexoMAGIC's breach

of contract claim as related to outstanding accounts receivable is somehow not a collections action is wholly illogical. Drexel has withheld payment of all invoices based on the increased daily rate and decreased commission, contractual interest invoices, amounts relating to student labor wages, inventory invoices, and dining dollars. (SOF ¶ 99). As a result of Drexel's refusal to pay amounts owed, SodexoMAGIC filed its Supplemental Filing to collect those amounts. SodexoMAGIC's claim falls squarely within Section 10.12, and as such, SodexoMAGIC is entitled to expenses, attorneys' fees, and court costs as related to this claim.

## III.    Conclusion

For the foregoing reasons, SodexoMAGIC respectfully requests that this Court grant summary judgment in its favor, dismissing Counts I and II of Drexel's Amended Counterclaim with prejudice, granting summary judgment in SodexoMAGIC's favor on Count V of SodexoMAGIC's Supplemental Filing to the Original Complaint, and awarding SodexoMAGIC damages, including contractually required attorney fees, costs, and interest.

Dated: June 27, 2018

**SODEXOMAGIC, LLC**

By its counsel,

*/s/ Robert C. Heim*

**DECHERT LLP**

Robert C. Heim (PA I.D. No. 15758)
robert.heim@dechert.com
Selby P. Brown (PA I.D. No. 318687)
selby.brown@dechert.com
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000


*/s/ Timothy J. Fazio*

**HUNTON ANDREWS KURTH LLP**

Harry L. Manion (Admitted *pro hac vice*)
hmanion@huntonak.com
Timothy J. Fazio (Admitted *pro hac vice*)
tfazio@huntonak.com
Katharine A. Dennis (Admitted *pro hac vice*)
kdennis@huntonak.com
125 High Street, Suite 533
Boston, MA 02110
Telephone: (617) 648-2800

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2018, I caused a true and correct copy of the foregoing Reply Memorandum in Support of SodexoMAGIC's Motion for Summary Judgment to be served on all counsel of record by operation of the Court's Electronic Case Filing system.


*/s/ Timothy J. Fazio*

Timothy J. Fazio (Admitted *pro hac vice*)
tfazio@huntonak.com
HUNTON ANDREWS KURTH LLP
125 High Street, Suite 533
Boston, Massachusetts 02110
Telephone: (617) 648-2800


*Attorney for Plaintiff SodexoMAGIC, LLC*